THE LEHIGH COAL AND NAVIGATION COMPANY

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. The receiver of a railroad corporation has no power, without the authority of the chancellor, to make a contract which will bind the trust.

2. All contracts made by the receiver of a railroad corporation are subject to the control of the chancellor, and he may modify them, or disregard them entirely, as to him may seem best.

On petition by Edward W. Vanderbilt and Edward W. Hopkins, and answer by Henry S. Little, receiver of the Central Railroad Company of New Jersey, and depositions taken in open court.

*Mr. Holmes,* of New York City, and *Mr. A. Q. Keasbey,* for petitioners.

*Mr. Benjamin Williamson,* for receiver.

VAN FLEET, V. C.

The petitioners, Edward W. Vanderbilt and Edward W. Hopkins, are dealers in railroad supplies. They formed a copartnership to engage in that business in March, 1881. Between the formation of their copartnership and the death of the first receiver of the Central Railroad Company of New Jersey, which occurred on the 3d day of March, 1882, they show that orders were issued to them by the purchasing agent of the receiver, for cross-ties and lumber, to an amount exceeding $535,000. Of the amount so ordered, over $200,000 has been delivered and paid for; an additional part has been offered to the present receiver and he has refused to receive it. Of the whole quantity ordered, over $300,000 remains to be delivered. The following

statement will show the character and value of that yet to be delivered, sufficiently for present purposes :

| | | |
|---|---|---|
| Georgia pine lumber | $8,335 | 70 |
| North Carolina plank and sawed timber | 19,221 | 80 |
| Cross-ties | 135,941 | 87 |
| White oak timber | 89,221 | 95 |
| White oak switch timber | 46,186 | 80 |
| White ash timber | 2,027 | 87 |
| | $300,926 | 99 |

The orders for the ties were all drawn on the same date, January 17th, 1882, and involve an outlay, as above shown, of nearly $136,000. The present receiver having refused to accept certain of the material offered, and also notified the petitioners that he would not receive that yet to be delivered, the petitioners now apply to the court, praying that the receiver be directed to accept and pay for the material which has already been offered, and which he has refused to receive, and also that he be directed to receive that which shall hereafter be delivered under the orders, or that such other direction be given to him as shall be equitable and just, under the circumstances of the case.

Assuming that the orders issued to the petitioners are entitled to be treated as contracts, the important question is, do they bind the trust? The principle which must govern the court in deciding this question seems to me, from the very nature of the case, to be quite obvious and simple, and it is this : when a railroad corporation passes into the custody of the law, for the purpose of having its road operated and its property administered by the chancellor, for the benefit of the public and for the protection of its creditors and stockholders, neither its franchises nor its property can be legally charged with any burden or obligation without the order of the chancellor. The chancellor is in possession of this railroad. The receiver is the chancellor's officer ; he acts simply in a fiduciary capacity, and is at all times subject to the orders of the chancellor. The statute regulating the operation of railroads while in the custody of the law, de-

clares that the receiver shall operate the road for the use of the public, subject at all times to the orders of the chancellor. *Rev. p. 196 § 106*. The chancellor may, at any time, for whatever may seem to him sufficient cause, remove the receiver, and not a dollar expended in operating the road can be allowed to the receiver, in his accounting with the trust, except by the order of the chancellor. All outlays made in behalf of the trust must either be authorized in advance, or subsequently ratified by the chancellor. Whatever is not so authorized or ratified, cannot be charged against the trust. This presents the whole argument in a single sentence. It is thus demonstrated, as it seems to me, that nothing the receiver can possibly do, by contract or expenditure, can be made effectual against the trust without the sanction of the chancellor.

The rule as to what expenditure the receiver of a railroad corporation may make, without first obtaining the approval of the chancellor, with certainty that allowance will be made therefor, is stated as follows by Mr. Justice Bradley of the supreme court of the United States, sitting as circuit judge :

" It may be laid down as a general proposition that all outlays made by the receiver in good faith, in the ordinary course, with a view to advance and promote the business of the road, and to render it profitable and successful, are fairly within the line of discretion which is necessarily allowed to a receiver entrusted with the management and operation of a railroad in his hands. His duties, and the discretion with which he is invested, are very different from those of a passive receiver, appointed merely to collect and hold moneys due on prior transactions, or rents accruing from houses and lands. And to such outlays in ordinary course may properly be referred, not only the keeping of the road, buildings and rolling stock in repair, but also the providing of such additional accommodations, stock and instrumentalities as the necessities of the business may require, always referring to the court, or to the master appointed in that behalf, for advice and authority in any matter of importance which may involve a considerable outlay of money in lump. * * * In extraordinary cases, involving a large outlay of

money, the receiver should always apply to the court in advance, and obtain its authority for the purchase or improvement proposed." *Cowdrey* v. *Railroad Company, 1 Woods 336.* This rule, it will be observed, simply prescribes what expenditures, out of the funds in his hands as receiver, the court will recognize as legitimate and proper when the receiver comes to account for the administration of his trust, but nothing here said gives the slightest support to the notion that the receiver may, in virtue of the power of his office, make a contract, without the authority of the court, which will bind the trust, or which the court will be bound to recognize without regard to its necessity or propriety. A receiver may, undoubtedly, appropriate moneys in his hands belonging to the trust, to such purposes, connected with the trust, as he may think proper, always taking the risk that the court will finally approve his action, but he has no authority to bind the trust by contract without the authority of the court. Until his contracts are approved or ratified by the court, the court is at liberty to deal with them as to it shall appear to be just, and may either modify them, or disregard them entirely.

This, in my judgment, is the only safe rule that can be adopted. The chancellor is unquestionably charged with the responsible and delicate duty of finally passing upon all outlays, and deciding whether they were necessary, proper or judicious, and should be allowed or not. It is a duty from which he cannot escape, and which he is bound to perform, as he is bound to perform all his other judicial duties, fearlessly, impartially and justly. There can be no doubt that the chancellor may annul or disregard any action of the receiver which seems to him to be improvident, or likely to obstruct or prevent a wise and just administration of the trust. Now, if receivers of this class are allowed to enter into engagements, independently of the chancellor, which shall bind the trust, it is easy to see that such receivers will be forced into a position, where their bias will always be very strongly in favor of the fairness, wisdom and expediency of their action, and in such a condition of affairs, it requires no prophet to foresee that many contracts will be made,

which will have the appearance, under an arranged or fabricated
state of circumstances, of being necessary or judicious, but
which in fact, will be grossly otherwise, but which from the diffi-
culties and obstructions with which the court is environed, it will
be impossible, except in cases distinguished by great fraud or gross
extravagance, to see in their true light, and to deal with as truth
and justice demand.   But this, in my judgment, is not a matter
of policy, but a question of power.   And, in my opinion, a re-
ceiver of. a railroad corporation has no authority, without the
sanction of the chancellor, to make a contract which will bind
the trust.

The petitioners, in accepting these orders, acted with their
eyes wide open.   They knew what they were doing.   They
were dealing with an officer possessing very limited powers, and
who was constantly subject to the orders of the power which
created him.   They knew that the chancellor, in obedience to
the law, had taken possession of this corporation for the pur-
pose of giving due protection to its creditors and stockholders,
and that he was bound to guard their rights and interests with
the most sedulous care, and to prevent everything like extrava-
gance and waste.   They must also be assumed to have known
that the receiver could make no contract effectual against the
trust, which was not first authorized or subsequently ratified by the
chancellor.   They were at liberty to decline to contract until
such authority was obtained, or to require the receiver to bind
himself in his individual capacity.   If they chose to act without
adopting such precautions as were necessary to insure them
against loss, they must be understood as having deliberately
assumed whatever risk attended their venture, and if it has
turned out that the hazards were greater than they estimated, or
that the course of events has been less propitious for them than
they hoped, their miscalculations or misfortunes are not a griev-
ance, but rather the result of their own rashness.   They stand
in this matter as mere volunteers, and this court should not,
therefore, extend help to them, even if their condition is one of
great hardship, if it must be given at the expense of those who
have higher claims upon its protecting care.

But, simply deciding that these orders do not bind the trust,

and that the court is at liberty to ratify them or disregard them, as to it may seem wise and just, does not determine all the questions presented for judgment by this application. If the material covered by these orders is reasonably necessary for the present purposes of the road, and can be obtained of the petitioners at prices as moderate as it can be obtained of other dealers, and at such times and in such quantities as will enable the receiver to make the best use of it, to refuse to receive it merely because no legal obligation exists rendering its acceptance a duty, would be both arbitrary and unjust. But the proof shows that a large part of the material in controversy is not only not now needed, but that a part of it is wholly unfit for railroad purposes, and if accepted, would never be used. The orders, taken in gross, it will be observed, cover an enormous quantity of material. Those issued for ties, on a single day, require the delivery of four hundred and fifty thousand, a number sufficient to build one hundred and eighty miles of road, counting two thousand five hundred to the mile. The proof shows that the receiver now has on hand sixty thousand more ties than will be used during the current year. Such transactions cannot be accurately and plainly described, except we say they are improvident.

When the orders are viewed in their aggregate, and it is seen that, in a single year, the material ordered of the petitioners amounted to over half a million of dollars, more than one-half of which remains to be delivered; and when it is remembered that, in most instances, the orders neither state a price nor designate a time or place of delivery, and that, so far as appears, the petitioners never, in a single instance, bound themselves to furnish the material ordered, but left themselves free to furnish it or not, as their interest might dictate, it is extremely difficult to believe that the orders were understood by either party to constitute completed binding contracts. The more reasonable theory respecting them, in view of all the facts, is, as it seems to me, that they were simply issued as notifications to the petitioners, of what material would probably be needed by the road in the future, to afford them an opportunity to make such preparation

to furnish it, in case it should be required, as they should deem safe and prudent, but they were under no obligation to furnish it in any event, nor the receiver to take it, unless he gave a further special order, designating price and the time when delivery must be made.

There are other facts which need not be mentioned or discussed, entitled to more or less weight, the effect of which is to strengthen and confirm my conclusion. After careful and patient consideration of the whole case, my judgment is that the petition must be dismissed.

I think it is proper to state that I regarded this case as so important and novel, in most of its features, that it should not be decided without conference with the chancellor, and I am much gratified to be able to say, after conference with him, that he concurs in the principles enumerated in the foregoing opinion.