METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. NORTH
CAROLINA LUMBER CO. et al.

AMERICAN BOX CO. et al. v. SAME.

(Circuit Court, E. D. North Carolina.   April 13, 1908.)

1. RECEIVERS—DUTIES AND POWERS.
    Receivers are instrumentalities of the court, and are required to be
impartial as between the parties litigant, and should have authority from
the court, either express or implied, for all of their acts.

2. CORPORATIONS—MORTGAGES — FORECLOSURE — RECEIVERS — RIGHT TO TAKE
    PART IN LITIGATION—EXCEPTIONS TO MASTER'S REPORT.
    Receivers appointed for the property of a corporation in a suit to fore-
close a mortgage thereon have no standing to file exceptions to the re-
port of the master determining the respective rights of the mortgagees
and other creditors, nor will such exceptions be entertained when filed in
the name of the receivers "and creditors," no creditors being named.

In Equity.   On exceptions to report of master.

Day, Bell & Dunn, Jno. W. Hinsdale and Murray Allen, for re-
ceivers and creditors.

Womack, Hayes & Pace, for North Carolina Lumber Co.

F. H. Busbee, Jno. Larkin, and T. McIlvaine, for Metropolitan
Trust Co.

PURNELL, District Judge.   The master after setting forth the
different hearings in New York, etc., reports the following findings
of fact:

I. That the plaintiff, Metropolitan Trust Company, was at the time of
the filing of the bills herein, and now is, a corporation organized under the
laws of the state of New York, and has its principal office in said state, and
is a citizen thereof, under the laws fixing the jurisdiction of this court.

II. That the defendant the North Carolina Lumber Company is a corpora-
tion organized under the laws of the state of North Carolina, having its prin-
cipal office at Tillery, N. C., in Halifax county, and is a citizen and resident
of North Carolina and the Eastern district thereof, under the laws defining
the jurisdiction of this court.

III. That the defendants Burgwyn, Leary, and Travis are all residents and
citizens of the state of North Carolina, under the laws defining the jurisdiction
of this court, the said Burgwyn living in Weldon, N. C., the said Travis in
Halifax, N. C., and the said Leary, at the time of the original and amended
bills were filed herein, resided at Tillery, Halifax county, in the state of
North Carolina, but is now a resident of the state of New York, and that the
amount in controversy in this suit largely exceeds $2,000, exclusive of interest
and costs.

IV. That the North Carolina Lumber Company on or about the 1st of
June, 1893, executed a deed of trust to the Atlantic Trust Company of New
York City, in which was conveyed its entire property, real and personal, wher-
ever situate, then owned by it or to be after acquired by it, and its franchise
(said deed of trust having been duly registered in said county of Halifax), and
securing an issue of 75 bonds of the said company, payable to the bearer or
the registered holder thereof, each in the sum of $1,000, payable in gold, on
the 1st of June, 1903, with interest at 6 per cent., payable semiannually, in
gold, coupons attached, and that 60 of said bonds were sold and delivered to
the purchasers thereof, at par, in money, and 15 thereof were hypothecated
with creditors for loans of money, and the proceeds of the sales and of the loans
used in the purchase of timber land and timber rights and in the operation
of the plant, and that H. H. Fries, A. J. McDonald, and A. De Bary, pur-

chasers of 5 bonds each, were both stockholders and directors of the said lumber company.

V. That on or about the 29th of January, 1895, the North Carolina Lumber Company executed a deed of trust or mortgage to the said Atlantic Trust Company, covering its entire property, wherever situate, and such other property as it might thereafter purchase and its franchise (said deed of trust being duly registered in said Halifax county), purporting to secure an issue of 100 bonds of the said company, payable to the bearer, or, if registered, to the registered owner thereof, each in the sum of $1,000, payable in gold, on the 29th of January, 1905, with interest at 6 per cent., payable semiannually in gold, coupons attached, and the said deed of trust containing similar provisions as to right of possession of the property by the lumber company until default, the accumulation of a sinking fund, rights of receivership and foreclosure, and the right of sale of lumber and personal property and unimproved lands as are set forth in a certain deed of trust executed by the said lumber company to the said Atlantic Trust Company in January, 1897, and registered in the register's office of Halifax county, N. C.

VI. That the said bonds and deed of trust described in paragraph V were executed under the following authority, to wit:

(1) A resolution of the stockholders of the company held on November 30, 1894, as follows:

"Resolved, that this company request the holders of its first mortgage bonds to surrender the same to the Atlantic Trust Company of New York, and receive in lieu thereof an equal number of first mortgage coupon bonds for a like amount and payable at the same time, with interest at the rate of 6 per cent. per annum, payable semiannually, to be issued under a like new first mortgage made to secure the payment of 100 first coupon bonds for $1,000 each, and in case all the holders of the present first mortgage bonds so consent and as in fact surrender to the said trustee the said bonds, with all the coupons thereon not yet due, so that the first mortgage now existing can be canceled and satisfied of record.

"Resolved, that the company execute and deliver to the Atlantic Trust Company of New York a new first mortgage on all the property, real and personal, in the same general form as the present mortgage, but with such changes therein in relation to the sale by the company from the time of said mortgage of its unimproved real property within the limits of the town of Tillery as the counsel of the company may advise to secure the payment of 100 first mortgage bonds for $1,000 each, payable at the same time as the present bonds, with interest thereon at the rate of 6 per cent. per annum, payable semiannually, such bonds to be in all respects like the present bonds, save in date of execution and other formal changes consequent on account of the increase in the number of the bonds from 75 to 100, and that this company make and execute such 100 bonds, for $1,000 each, and that the said trust company be requested to certify and deliver to the company the whole of the said new 100 bonds."

(2) A resolution of the board of directors of the lumber company, of date February 25, 1895, as follows: "Resolved, that the Atlantic Trust Company be, and it is hereby, requested to deliver to each of the persons, including this company, who have deposited with it any of the former first mortgage bonds of this company, an equal amount of the new first mortgage bonds of this company, issued under the mortgage dated January 29, 1895."

VII. That under the powers and authority recited in the next above two paragraphs the company executed the bonds and deed of trust of date January, 1895, and delivered 75 of the same to each of the persons who held the 75 bonds of the company under the issue and deed of trust of 1893, who in exchange for the 75 bonds of 1895 surrendered the bonds of 1893, and that the 75 bonds of the issue of 1893 were destroyed and the deed of trust securing the same was canceled and marked "Satisfied" on the registry of said Halifax county, and that 15 of the bonds of the issue of 1895 were sold and delivered to the purchasers thereof, at par, for money.

VIII. That the money derived from the sale of the bonds in part and the hypothecation of others of the issue of 1895 was necessary for the company to improve its property and to operate its plant, and that it was so used.

IX. That on or about the 1st day of January, 1907, Harold H. Fries, president of the North Carolina Lumber Company, with the seal of the company attached, and Fritz Von Bernuth, Jr., secretary of said company, signed and executed 150 bonds, known as the first mortgage bonds of the North Carolina Lumber Company, numbered consecutively 1 to 150, both numbers inclusive, in which the company promised to pay to the holder of each bond, or, in case the bonds should be registered, then to the registered owner, on the 1st of January, 1907, the sum of $1,000 United States gold coin of or equal to the then present standard of weight and fineness of the gold coin of the United States, at the office or agency of the said lumber company in the city of New York, and also interest on the said bonds at the rate of 6 per cent. per annum, payable in gold coin at the same place semiannually on the 1st days of July and January in each year.

X. That at the time of the execution of the bonds of 1897, mentioned in the next preceding paragraph, a deed of trust or mortgage to the said Atlantic Trust Company, known as the first mortgage of the North Carolina Lumber Company, was signed and executed in the name of the said company, with the corporation seal affixed, and by the president and secretary of the said company, in the manner and form following, viz.: "The North Carolina Lumber Company [Seal], "Harold H. Fries, President, Fritz Von Bernuth Jr., Secretary. Atlantic Trust Company, L. V. F. Randolph, President, J. S. Suydam, Secretary"—the purpose being to secure the payment of the said 150 bonds and the interest; that in the said mortgage or deed of trust is embraced all of the property of the said North Carolina Lumber Company, both real and personal, including its franchise, wherever situated, then owned by it, or which might thereafter be acquired by it, all of which property then owned by the company being particularly described in said deed of trust; that said deed of trust was duly registered in Halifax county, N. C., a true and correct copy of which is annexed to the amended bill marked "Exhibit A," and is made a part of this report, the property being fully described therein, which is hereby referred to.

XI. That the said deed of trust on its face provides for the equal and pro rata benefit and security of each and all of the said several persons, partnerships, and corporations who should at any time be and become the lawful owners or holders of the several bonds and interest coupons secured without any preference by reason of priority in the time of the issue or negotiation thereof; and thereupon the Atlantic Trust Company, for itself and its successors, accepted the trusts in said deed of trust provided for by signing, sealing, and acknowledging the same by its president and secretary thereunto duly authorized, as appears by said Exhibit A and the evidence in the case.

XII. That the authority and powers under which the said bonds and deed of trust of January, 1897, were executed by the president and secretary of the North Carolina Lumber Company as set out in paragraphs IX and X of this report were as follows: A resolution by the board of directors, at a meeting held on the 24th of September, 1896, after a discussion of the financial condition of the company, in the following words: "It was also decided, if possible, that the bonds of indebtedness of the company should be raised from $100,000 to $150,000 and that the consent of the various bondholders should be obtained agreeing to same being effected." (2) A subsequent agreement (December 24, 1896) by each and all of the stockholders in writing (H. H. Fries, A. De Bary, and A. J. McDonald, directors as well as stockholders, concurring) to the making of the said deed of trust and the execution of the said bonds; the said agreement being in the following words: "Know all men by these presents, that we, stockholders of the North Carolina Lumber Company, holding the amount of stock set opposite our names hereunder, do hereby waive any notice whatever of a meeting of stockholders of this company for the purpose of passing upon the question of issuing the new first mortgage upon the property of this company, and do hereby consent to the making and delivery by this company of 150 first mortgage bonds, to be numbered from 1 to 150, consecutively, for $1,000, payable in gold coin on January 1, 1907, with interest at 6 per cent. per annum, payable semiannually in gold, and to the execution and delivery of a first mortgage or deed of trust securing said bonds substantially in the form of the mortgage made by this company

to the Atlantic Trust Company, dated January 29, 1895, with sinking fund under said mortgage to begin in the year beginning the 1st day of July, 1897. (The said stockholders' agreement above set out was signed and executed, not in a regular or special meeting of the stockholders, but singly and separately.) (3) An entry made on the regular secretary's book at a meeting of the directors held on the 4th of January, 1897, in the following words: "Proof of new bond of company was submitted, and same was returned to the counsel for further action."

XIII. And thereafter and in pursuance of said action of the directors and consent of stockholders, the bonds and mortgage were prepared by the counsel of the company, to be executed to the Atlantic Trust Company, as trustee, and were, on the 1st day of January, 1897, signed and executed by the president and secretary of the said North Carolina Lumber Company under the seal of the company, and by the duly authorized officials of the said trust company on behalf of said trust company, as is hereinbefore set out in the ninth and tenth findings of fact. That the bonds were only certified in accordance with the terms of said mortgage, and were delivered by the said trust company to the North Carolina Lumber Company in pursuance of a resolution of the board of directors passed on the 28th of January, 1897, which is in the following language:

"New York, Jan. 29th, 1897.

"Mr. J. S. Suydam, Atlantic Trust Company, New York—Dear Sir: Please deliver to bearer all the first mortgage bonds of this company, secured by mortgage dated the 1st day of January, 1897, to the Atlantic Trust Company, and oblige,

"Yours truly,                      The North Carolina Lumber Company,
                                    "[Signed]   Harold H. Fries, Pt.

"I, Fritz Von Bernuth, Jr., Secretary of the North Carolina Lumber Company, do hereby certify that the following is a copy of a resolution of the said the North Carolina Lumber Company, duly passed by its board of directors on January 28, 1897: 'Resolved, that the Atlantic Trust Company be, and it is hereby, requested to deliver to the company all of the first mortgage bonds of this company, secured by mortgage dated January 1, 1897, to wit, 150 bonds, each for the sum of $1,000.'

"[Seal.]                      [Signed]   Fritz Von Bernuth, Jr., Sec.

"Received January 30, 1897, from the Atlantic Trust Company, the bonds Nos. 1–150, inclusive, which the said company is requested by the foregoing resolution to deliver to the North Carolina Lumber Company, and which the North Carolina Lumber Company, by a letter dated January 29, 1897, requested the said trust company to deliver to bearer.

"[Signed]   Phillip S. Dean."

XIV. That of the said 150 bonds of the issue of 1897, 70 numbered 1 to 55, and those numbered 71, 72, 73, 74, 75, 81, 82, 83, 84, 85, 86, 87, 88, 89, and 90, were exchanged with the purchasers of the like numbered bonds of 1895, and 20 bonds, numbered 56 to 70, inclusive, and 76 to 80, inclusive, were exchanged with those creditors who held a like amount and of similar numbers of the bonds of 1895 as collateral security for money lent to the company (the said last-mentioned 20 bonds having been afterwards withdrawn from collateral deposit and sold and delivered to purchasers, at par, in money), and 23 were sold and delivered to purchasers, at par, in money, and the remainder, 37 in number, were hypothecated with creditors for loans of money made to the company, and that the bonds of the issue of 1895 were burnt and destroyed, and the deed of trust securing them canceled and satisfied on the registry of said Halifax county, and that the said 150 bonds of the issue of 1897 are now outstanding, and were owned, at the time of the filing of the bill in the case of the Metropolitan Trust Company against the North Carolina Lumber Company, March 22, 1906, by the following named persons, as follows: Twenty-five, numbered 1 to 25, inclusive, to Elizabeth Garnett, London, England; 13, numbered 26, 27, 28, 29, 30, 69, 70, 76, 89, 90, 117, 118, and 119, to A. De Bary, of New York City; 11, numbered 31, 32, 33, 34, 35, 75, 82, 88, 56, 68, and 91, to A. J. McDonald, of New York City; 7, numbered 36, 37, 38, 39, 40, 92, and 93, to J. Calvet & Co., Bordeaux, France; 5, numbered 41, 42, 43, 44, and

45 to Albert Fries, New York City; 6, numbered 46, 123, 124, 125, 126, and 133, to Fritz Von Bernuth, New York City; 2, numbered 72 and 73, to Daniel Schuackenburg, of New York City; 7, numbered 51, 52, 53, 54, 55, 79, and 94, to II. H. Fries, of New York; 20, numbered 47, 48, 49, 50, 51, 71, 101, 102, 103, 104, 105, 57, 58, 59, 60, 61, 62, 63, 64, 65, and 66, to Frederick Pennington, London, England; 1, numbered 67, to L. C. Bierwith, Dover, N. J.; 6, numbered 74, 77, 78, 86, 87, and 100, to Emily Fries, of New York; 5, numbered 80, 81, 95, 96, and 97, to Alice Fries, of New York; 3, numbered 83, 84, and 85, to Fanny Fries, of New York; and 2, 98 and 99, to A. Linden, of New York—and the remainder of the 150 bonds were deposited with the persons herein below named as collateral security for loans made to the company in numbers and amounts as follows: 106, 107, 108, 109, 110, 111, 112, 113, 120, 121, 122, 137, 138, 139, 140, 141, 142, 143, and 144, to A. De Bary, for the loan of $25,600; 114 and 115, to Charles Fries, for a loan of $1,500; 127, 128, and 129, to the New York National Exchange Bank, for a loan of $3,-500; 130, 131, and 132, to F. Von Bernuth, for a loan of $3,000; 134, 135, 136, 145, 146, 147, 148, 149, and 150, to Anna M. Gebhardt, for the loan of $9,500; 116, to Albert Fries, for a loan of $2,000.

XV. That the proceeds derived from the proceeds of the sale of the 113 bonds and the money obtained from the loans with the 37 bonds as collateral were received by the company and used for the improvement of its property and the operation of its plant, and were necessary expenditures.

XVI. That no certificate and schedule of preferred debts of the company was filed with the deeds of trust of 1893, 1895, or 1897 at the time of the registration of those deeds of trust in Halifax county, N. C.

XVII. That some of the bonds used by the company as collateral security would sometimes be withdrawn upon the payment of the debts for which they were pledged, and then used again by the company as collateral security on new loans.

XVIII. That in the year 1903 (January) the Atlantic Trust Company and the Metropolitan Trust Company executed an agreement by and through their presidents and trustees, providing for the merger of the Atlantic Trust Company into the Metropolitan Trust Company, that the said agreement was approved by the superintendent of banks of the state of New York, that the said agreement of merger was ratified and approved by the stockholders in regular meeting, and that the agreement and certificates were registered in the office of the clerk of New York county, in New York state, and clerk of Supreme Court of the said state for said county, and were afterwards registered in Halifax county, N. C., a copy of which will be filed with the evidence in this case, marked "Volume 13."

XIX. That at the time of the authorization of said deed of trust of 1897 by the directors of the lumber company, in the manner hereinbefore set out in these findings of fact, a majority of the directors, four out of five, were individually and personally interested therein, in that the same was made to secure bonds held by them and to be acquired by them.

XX. That Harold H. Fries, A. J. McDonald, Fritz Von Bernuth, Jr., and A. De Bary were stockholders and directors of the said lumber company at the time of the issue of the said 150 bonds, and that Treadwell Cleveland, the only other director of the company at that time, was the attorney in fact of F. Pennington, who was a stockholder; the said Fries, McDonald, Von Bernuth, De Bary, and Pennington owning nearly all the stock.

XXI. That the by-laws of the North Carolina Lumber Company require the seal of the company to all instruments requiring a seal by the treasurer (article 23). In the case of his absence, inability, or refusal to act, the directors could authorize some other officer to affix the seal; and it does not appear from the evidence that the seal was affixed by the treasurer to the deed of trust in controversy, or that it was not so affixed, nor that he was absent, unable, or refused to act, so as to empower the directors to designate some other officer, or that they authorized any one else to do so.

XXII. That article 18 of the by-laws of the said lumber company, in force at the time of the execution of the said deed of trust as hereinbefore set out, provides as follows: "All bills, notes, checks, or other negotiable instruments of the company shall be made in the name of the company, and

shall be signed by the treasurer and countersigned by the president, or in his absence or inability to act by the vice president. No promissory note, mortgage, bill of sale, or deed shall be given by the company unless the making thereof be duly and specially authorized by the vote of the directors of the company, duly had at a regular or special meeting of the board of directors, and entered on the minutes of the board. No officers or agents of the company, either singly or together, shall have the power to make any bill, note, or check, or other negotiable instrument, in the name of the company or to bind the company thereby, except as in this article prescribed and provided."

XXIII. That at the time of the execution of the said deed of trust of 1897 the said lumber company was indebted to divers persons other than creditors who held collateral bonds of the company as security for their debts, which indebtedness was unsecured, both by bills payable and in the nature of general indebtedness—general running accounts—and has been continuously in debt, for money borrowed, since that time, independent of the amount represented by the bonds deposited as collateral security, in an increasing yearly amount, although there were times, between 1897 and the time when receivers were appointed for the said company in June, 1905, when the company was free from debt for general merchandise, but at such times would owe for borrowed money, outside of the amounts represented by the bonds on deposit, unsecured, and that said lumber company was embarrassed financially at the time of the execution of the said deed of trust of 1897, and continued to be so embarrassed up to the time of the appointment of receivers in June, 1905, when it was totally insolvent; that no dividends were ever declared or paid on its stock; that it lost money from the beginning of its operations, and its entire property is insufficient and inadequate security for the payment of the outstanding bonds secured by said deed of trust.

XXIV. That the current indebtedness of the lumber company at the time of the execution and delivery of the said bonds, and the mortgage of 1897 securing the same, has long since been paid off, and that all of the present liabilities of the company, outside of the bonds and loans, for which the bonds are collateral, are, of recent origin.

XXV. That the said lumber company, under its charter, had and has the power to hold, lease, sell, and mortgage real property to any amount necessary for its purposes.

XXVI. That in the said mortgage of 1897 there was a provision in these words: "Until default shall be made by the company in the payment of the principal or interest of the bonds secured hereby, or any of them, or in respect to any act or covenant herein required by it to be kept or performed, the company shall be suffered and permitted to possess, manage, operate, and enjoy the said property, and each and every part thereof, and shall likewise be suffered and permitted, at all times and from time to time, as the proper management of the business of the company requires, to cut and sell its timber and lumber, and to sell, alter, exchange, add to, remove, and replace any and all materials, supplies, and stores, machinery, tools, implements, fixtures, and all other personal property or chattels, now or hereafter owned by the company and mortgaged hereby, or intended so to be; provided, always, that the security of said bonds shall not be in any wise reduced or impaired. The company shall have the further right, at all times, to grant and convey, wholly freed and discharged from the lien hereof, the whole or any part of its unimproved real estate, embraced within the limits of the town of Tillery, which shall be sold by the said company to any person who may satisfactorily agree with the said company to improve the said real estate by erecting a building or buildings thereon, and shall also have the right, at all times, to grant and convey, wholly freed and discharged from the lien hereof, the whole or any part of its real estate, wherever situated, which shall no longer be useful or necessary in the proper and judicious management of the business and interests of the company for such consideration as it may think best; provided, however, that no such consideration as it may think which shall no longer be useful or necessary in the proper and judicious management of the business and interests of the company, shall be made without the express assent in writing of the trustee, which assent may be given by the trustee upon its receiving a certified copy of a resolution of the board of directors of the com-

pany, advising such conveyance by the company for the reason that such real estate is no longer useful or necessary in the proper and judicious management of the business and interests of the company, and the company is hereby expressly authorized, under its seal, to release from the operation and effect of this mortgage any unimproved real estate embraced within the limits of the town of Tillery, which shall be sold as aforesaid, and also any real estate sold because no longer useful or necessary in the proper and judicious management of the business and interests of the company, or exchanged for other property in good faith; and provided, further, that all property taken in exchange for or purchased with the proceeds of any real estate conveyed as above expressed shall forthwith become and be within the operation of this indenture, and remain so hereafter in the same manner and to the same extent as if the same had been originally conveyed in trust and mortgaged hereby and hereunder, and, further, that the net cash proceeds of such conveyance shall be immediately applied by the company in good faith to the acquisition of additional real estate of not inferior value, or to the erection or enlargment of buildings forming part of the plant of the company, or to the purchase of other material or property necessary for the business of the company."

XXVII. That since the year 1893, and down to the time the said lumber company went into the hands of the receivers, no dividend or dividends were ever declared or paid to the stockholders, and the company continually lost money by its operations.

XXVIII. That after the said mortgage of 1897 was executed as aforesaid the said lumber company acquired certain tracts of land and timber rights and certain real and personal property, and the same became and are subject to the lien of the said mortgage, under the terms thereof. A schedule of the said after-acquired property, together with a description thereof, is annexed to the bill, marked "Exhibit B," and may be taken as hereby repeated.

XXIX. That by the terms and conditions of the said deed of trust of 1897 (as will appear by reference to it) it was provided, covenanted, and agreed that the said lumber company would pay to the several holders of the said bonds and coupons, or, in case the said bonds should be registered, then to the registered owner thereof, the principal and interest mentioned in, and secured by said bonds and coupons respectively as and when the same should respectively become due and become payable according to their tenor; that it would appropriate and set apart, during the year 1897 and each successive year thereafter, until all the bonds secured by said deed of trust should be paid and satisfied, a sum annually equal to 5 per cent. of the par value of all of said bonds which might be outstanding at the time such sums of money were so appropriated and set apart, said sums, together with any increase of the same arising from interest of income, to constitute a sinking fund for the payment of the bonds secured by said mortgage. That by the terms and conditions of said mortgage or deed of trust it was further provided, covenanted, and agreed that if the said lumber company, its successors and assigns, should at any time make default, or refuse, neglect, or omit, for six months after the same shall fall due and be demanded, to pay any semiannual installment of interest, payable upon the bonds or any of them, or should make default, or refuse, neglect, or omit, when the same shall fall due and be demanded, to pay the trustee, personally or by its attorneys or agents, might forthwith enter into and upon, and take possession and control of, all and singular the property and premises, real and personal, thereby mortgaged, including the earnings, income, issues, and profits thereof.

XXX. That by the terms and conditions of said deed of trust of 1897 it was further covenanted and agreed that, in case default should be made by the said lumber company in the performance of the provisions of the said deed of trust, then and in any such case, if the holders of a majority in value of the then outstanding bonds thereby secured should so elect and notify the trustee in writing of such election, the whole principal of all of the bonds secured by said deed of trust and outstanding should forthwith be declared by the trustee to be, and should become, immediately due and payable, although the period limited in said bonds for the payment thereof should not have expired; and thereupon, in any such case, it should be lawful for the trustee, after entry as aforesaid, or without entry upon request

made by the holders of a majority in value of the said bonds outstanding, to proceed to sell at public auction to the highest bidder all and singular the premises and property, real and personal, including the franchises, thereby mortgaged, or expressed or intended so to be, which should be subject to the lien, operation, and effect of said indenture, with the appurtenances, and all benefit and equity of redemption of the said lumber company; and that the trustee, on being requested so to do by the holder or holders of a majority in value of the said bonds outstanding, should take all such lawful steps as might be requisite to protect the rights of the holders of all of the bonds secured by said mortgage. That by the terms and conditions of said mortgage of 1897 it was further covenanted and agreed that, upon the filing of a bill in equity or other commencement of judicial proceedings to enforce the rights of the trustee and of the bondholders under the said mortgage, the trustee should be entitled to the appointment by any court of competent jurisdiction of a receiver or receivers of the mortgaged property, and of the earnings, income, rents, issues, and profits arising therefrom, pending such proceedings, with such powers as the court making such appointment should confer.

XXXI. That default was made in the payment of semiannual installments of interest evidenced by coupons which became due and payable and accruing upon the bonds secured by said mortgage and outstanding as follows, viz.: As set forth in paragraph XI of the bill, and as appeared, also, from the production of the bonds, themselves, in the evidence filed in volume 1 of the reported evidence.

XXXII. That the said lumber company made default in each and every year from 1897 to June, 1905, to appropriate and set apart for the payment of said bonds and coupons the amounts which they were required under the said deed of trust to appropriate and set apart for that purpose, and that all of said defaults have continued up to the time of filing this report, and the interest on the said bonds evidenced by said coupons, remains wholly unpaid, except as hereinafter to be mentioned. That said coupons, as the same became respectively due, were duly presented at the office of the said lumber company in the city of New York for payment, and payment of the same was refused, except in the following instances, to wit: Two coupons on bonds 114 and 115, the two first coupons, were paid; on four bonds, 52, 53, 54, and 55, three coupons on each were paid; on sixteen bonds, Nos. 26 to 30, inclusive, bonds 69, 70, 76, 89, 90, 98, and 100, inclusive, and bonds 117 to 119, inclusive, had the first five coupons paid on each; thirty bonds, numbered 31 to 35, inclusive, bonds 41 to 45, inclusive, bonds 51, 56, 68, 74, 75, and 77 to 79, inclusive, bonds 82 to 88, inclusive, and bonds 91, 94, and 130 to 132, inclusive, were paid six coupons on each, excepting that coupon No. 8 is missing from bonds 68, 75, 82, 88, and 91; on nine bonds, numbered 72, 73, 80, 81, and 95 to 97, inclusive, and on bonds 128 and 129, seven coupons were paid on each; on fifty-five bonds, 1 to 25, inclusive, 36 to 40, inclusive, 47 to 50, inclusive, 57 to 66, inclusive, 71, 92, 93, 101 to 105, inclusive, and 123 to 125, inclusive, eight coupons on each were paid; on three bonds, numbered 46, 126, and 133, nine coupons were paid on each; on one bond, No. 67, two coupons were paid; and on thirty bonds, numbered 106 to 113, inclusive, 116, 120 to 122, inclusive, 127 and 134 to 150, inclusive, no coupons were paid.

XXXIII. That by reason of default in the payment of such interest, and in the performance of other provisions of said mortgage as aforesaid, the holders of a majority in value of the bonds outstanding, secured by said mortgage, pursuant to the terms and provisions thereof, elected that the principal of all the bonds secured by the said mortgage or deed of trust, and issued thereunder and outstanding, should forthwith be and become due and payable, gave the Metropolitan Trust Company due notice in writing of such election, and duly made demand upon that said trust company, as trustee, as aforesaid, to declare the principal of all the bonds outstanding, secured by said deed of trust or mortgage, to be due and payable, and to proceed to collect both principal and interest of the said bonds by a foreclosure of the said deed of trust or mortgage and a sale of the mortgaged property or otherwise, and generally to protect the rights of the holders of all the bonds secured by said deed of trust or mortgage. That upon receipt of said demand

the Metropolitan Trust Company declared the whole principal of all the bonds secured by said deed of trust to be due and payable, and commenced this action in this court for the foreclosure of the said deed of trust.

XXXIV. That there are no outstanding judgments or incumbrances or rights which constitute liens, legal or equitable, upon the property of the said North Carolina Lumber Company, other than the lien of the said deed of trust, except such amounts as are in this report adjudged to be prior liens under the laws of North Carolina, all of which will appear with particulars in the subsequent finding in reference to the claims of the unsecured creditors, to be filed with this report, and are as follows in amounts: W. B. Dunn, guardian, and W. B. Dunn in his own right, $681.25; H. L. Roebuck, $88.70; Nellie Godfrey, $32.50; Scotland Neck Democrat, $4; and the Norfolk Landmark, $9.

XXXV. That the said 150 bonds are now outstanding in the hands, respectively, of the persons mentioned in paragraph XIV of the facts, or their assignees, or their transferees.

XXXVI. That the premises and property conveyed in the said deed of trust are so situated and circumstanced that a sale would be more advantageous to all in interest, of the plant together, with such timbered land as would be useful in the operation of the company's business in one parcel, and of the other real estate, consisting of agricultural lands, in separate tracts.

### Conclusions of Law.

I. That on or about the 31st of January, 1903, the said Atlantic Trust Company was merged with the Metropolitan Trust Company of the City of New York, by agreement of merger duly authorized, and executed by the two corporations in all respects as provided by the laws of the state of New York in such case made and provided, and accordingly, by virtue of said agreement and said laws, the said Atlantic Trust Company of the City of New York merged into and became, and now exists in and under the name of, the Metropolitan Trust Company of the City of New York, and said Metropolitan Trust Company, as successor, is now vested with all the rights, interests, property, and franchises, and was also invested with the same rights, interests, property, and franchises at the time of the filing of the bill in equity of the Metropolitan Trust Company in this case, and is subject to all the duties and liabilities of the said Atlantic Trust Company, and then and there became the trustee of said mortgage as fully, completely, and with the same rights and obligations, thereunder and to the same extent as if it had been by its present corporate name originally named as trustee in said deed of trust and in such name had then assumed the trust therein created, of all of which the said lumber company had due notice.

II. That each and all of the said bonds of the issue of 1897 are good and valid obligations of the said defendant the North Carolina Lumber Company, and each and all are entitled to the benefit of the security given by the said mortgage, share and share alike; principal and accrued interest sharing equally.

III. That there is now, at the time of the filing of this report, due and owing upon the said bonds the sum of $150,000, in gold coin, principal money, with interest on the several parcels thereof.

Upon, or soon after, the filing of the master's report, 30 exceptions were filed, signed by attorneys who underwrite their signatures, "Solicitors for the Receivers and Creditors." Nowhere in the exceptions are the names of the excepting creditors or those represented by the attorneys disclosed. These exceptions begin as follows:

"Come now W. A. Leary, W. H. S. Burgwyn, and E. L. Travis, receivers of the North Carolina Lumber Company, and the general creditors of the North Carolina Lumber Company, who have made themselves parties to the creditors' bill filed in this action, and except to the findings of fact and conclusions of law filed herein by Hon. W. A. Montgomery, standing master in equity, in the following particulars, to wit," etc.

This presents a novel question not raised by counsel, but into which the court deems it a duty to inquire ex mero motu: What right have the receivers to except? They are merely the hand of the court, to hold and manage the property placed in their hands by the court, under the direction of the court, for the preservation thereof for the benefit of the parties litigant, all the parties or those who shall establish the best right thereto. Foster's Federal Practice, Bates' Federal Equity Practice, and authorities cited. They should be impartial—represent no one interest, but all. And nowhere can authority be found—at least this court has found none after diligent search—which authorizes them to enter into litigation between parties touching the property placed in their hands, to be held until the same is distributed by order of the court. A receiver should have authority, express or implied, from the court for all his acts. He is the creature and arm of the court, from which he derives his existence as receiver, and has no authority, except such as he gets from the court. Property in his possession is in custodia legis, and is placed in his possession for conservative administration by the court. The functions of a receiver are twofold: (1) To preserve pendente lite the property and its income taken into custody, which is the subject of litigation, from deterioration, waste, or loss, destruction, or depreciation in value; (2) to administer the property and distribute it or dispose of it according to the rights of the parties to the suit, as ascertained and determined by the decree of the court in the cause. To engage in, sue, and defend in a cause at law or in equity they should obtain permission from the court appointing them. It is not contemplated they should take part in the litigation of the cause in which they are appointed, and have no standing in court for this purpose. He, the receiver, is but the creature of the court, the money or property in his hands is in custodia legis for whoever can make out a title to it. It is the court itself which has the care of the property in dispute, and he is merely the representative of the court, from which he must receive all his authority in the premises. All dealings with the property without such authority are void ab initio. Booth v. Clark, 17 How. 330, 15 L. Ed. 164.

The receivers in this cause asked for no authority to engage in or become parties to this litigation in the manner attempted by the filing of the exceptions herein; hence have no standing in court for this purpose. They were nominal parties to the first bill filed, and it does not appear they were necessary or indispensable parties. They were not parties to the mortgage or mortgages asked to be foreclosed. It is anomalous for a receiver to except to the decision of a master in chancery, the alter ego of the court for the investigation of questions involved in litigation referred to such master. The expression, "and creditors," etc., without disclosing them, does not add force to the exceptions, none of which go to the title of the receivers. The names of these creditors should have been disclosed in the exceptions, and not compel the chancellor to hunt through a voluminous record to ascertain who was meant or intended to be included in the exceptions. The exceptors were represented on the hearing by one of the receiv-

ers, from which several conclusions may be drawn. A careful examination of the record, in connection with these exceptions, discloses the fact that the cause was patiently heard, carefully considered, and properly decided, both as to facts and conclusions of law, and there is no merit in the exceptions, waiving for this purpose only their irregularity; hence the report of the master, both as to findings of fact and conclusions of law, is affirmed.

Let a decree for foreclosure in accordance with the prayer of the bill be entered. It is so ordered.