# MARCH, 1935.

MILLER FRANKLIN AND COMPANY, INC., APPELLANT, v. WILLIAM R. GENTRY, RESPONDENT.—79 S. W. (2d) 470.

St. Louis Court of Appeals.   Opinion filed March 5, 1935.

*Lewis, Rice, Tucker, Allen & Chubb* for appellant.

*Arnot L. Sheppard* for respondent.

*Luke E. Hart* of counsel.

SUTTON, C.—This is an action to recover $2788, being the balance claimed to be due plaintiff for expenses incurred and paid in making a survey of the business of Hamilton-Brown Shoe Company. The cause was tried before the court without a jury. There was a judgment for defendant, and plaintiff appeals.

Plaintiff's position in this court is that under the law and the uncontroverted facts the judgment should have been for plaintiff, and that this court should reverse the judgment of the trial court and remand the cause with directions to enter judgment in favor of plaintiff for the amount sued for.

Plaintiff's principal office is in the city of New York. Its business is industrial engineering service. The principal office of the Hamilton-Brown Shoe Company is in the City of St. Louis.

On August 22, 1930, plaintiff by a letter to Luke E. Hart, attorney for Hamilton-Brown Shoe Company, which was then being operated by defendant as receiver, under appointment by the United States District Court of the Eastern District of Missouri, proposed to make a survey of the business of Hamilton-Brown Shoe Company. It proposed that the survey would coordinate the findings of the examination with modern business practice and requirements, setting forth the shortcomings, faults, and deviations from economical and profitable operation for all divisions of the company, setting forth also the possibility of rectifying the condition and establishing the relation

of the shoe company to the industry as a whole. The proposal respecting charges to be made for the survey was stated as follows:

"Our fees for producing the survey and reports will be between twelve and fifteen thousand dollars plus the usual traveling and living expenses of our engineers outside of New York City. The expenses we estimate would be between two and three thousand dollars.

"W are willing to guarantee the fifteen thousand dollar amount as being the maximum fees and will agree to bill Per Diem rates if the Per Diem fees are less than twelve thousand dollars."

On August 27, 1930, plaintiff in a letter to Mr. Hart said:

"You are correct in the understanding that we guarantee our Per Diem fees for the examination will not exceed fifteen thousand dollars, to which, of course the usual traveling and living expenses of our engineers from New York will be added."

On September 8, 1930, the United States District Court, on petition of defendant as receiver, made the following order:

"It is Ordered, That the Receiver be and he is hereby authorized to employ the firm of Miller, Franklin & Company to make a survey of the operations and business of the Hamilton-Brown Shoe Company as expeditiously as possible, at a total cost of not to exceed $18,000.00, and that he proceed with same at once and take credit for the cost thereof in his accounts as Receiver."

On the same day defendant wired plaintiff as follows:

"Judge DAVIS in United States District Court here made order today directing me to have survey of Hamilton-Brown business made by your Company in accordance with terms stated in your letter to Luke E. Hart of August 22, 1930, and your letter to him of August 27, 1930. Please get your organization together and on the ground here and proceed at the earliest possible moment to make a survey as expeditiously as possible. Am confirming this by letter."

On September 15th defendant wrote plaintiff as follows:

"This will confirm my telegram to the effect that pursuant to the order of Judge Davis, of the Federal Court, who appointed me Receiver of the Hamilton-Brown Shoe Company, which order was made on the 8th day of September, 1930, and which granted me authority to employ you to make a survey of the Hamilton-Brown Shoe Company business, you are employed to proceed with that survey according to the terms mentioned in your two letters to Mr. Luke E. Hart, both of which were referred to in my telegram of September 8th, to you."

Plaintiff, upon receipt of defendant's telegram, began the survey, and completed the work in October.

On November 29th plaintiff billed defendant for $15,000 for services, plus $5636.53 for expenses.

On December 8th defendant wrote plaintiff as follows:

"Enclosed herewith I hand you voucher for $15,000 covering the contract price of the making of the survey which I employed your Company to make, pursuant to authority given me by the Federal Court which appointed me Receiver. This amount, of course, does not include anything for expenses and that is for two reasons. First, in view of the statements made in your correspondence with Mr. Hart and with me, we were led to believe that the expenses would in no event exceed the amount of $3000, and, therefore, in my petition to the Court I asked for and procured authority to expend not exceeding $18,000 for the services and the expenses of your organization in making the survey. Therefore, I have no authority at this time to pay more than $3000 for the expenses.

"In the second place, the amount of expenses, $5636.53, is so far in excess of your estimate, that I do not feel that I would be justified even in asking the Court to authorize me to expend that amount without some explanation which I could show the Court showing how and why the expenses ran so far above the $3000 limit.

"If you will have your company make out a statement showing the principal items of expense and explaining why the expenses ran so far in excess of what I was authorized to pay, I will be glad to submit the matter to the Court for its ruling."

On December 12th plaintiff replied, enclosing an itemized statement of expenses totaling $5788, an item of $151.47 having been omitted from the bill of November 29th.

On January 13, 1931, plaintiff wrote defendant asking for a check.

On January 19th defendant replied complaining that plaintiff's charges were excessive, and saying that since the court authorized payment of expenses only in the sum of $3000, it would present a rather embarrassing situation for him to now go back to the court and ask for authority to pay a larger amount than the outside estimate of expenses which plaintiff made before the survey was undertaken, and saying further that under these circumstances he was ready to pay $3000 for plaintiff's expenses, but that he did not feel that he should pay more, or that he should ask the court's authority to pay more.

Plaintiff replied that it could not accept that sum in full payment, and asked for reimbursement of the amount which it had paid out. Plaintiff wrote again on February 4th, asking for a check.

On February 6th defendant wrote plaintiff as follows:

"I have reviewed our correspondence and have given this matter a great deal of thought. I must very frankly tell you that I cannot see my way clear to pay more than $3000 for expenses incurred in making this survey. When you wrote to Mr. Hart and made an estimate of what your charges would be and what your expenses would be, you fixed $15,000 as your top estimate of charges, and

$3000 as your top estimate of expenses. In the abundance of precaution, I procured the Court's order authorizing me to go as high as $15,000 for the services and $3000 for the expenses.

"It would serve no useful purpose for me to again present the views which I have heretofore presented to you as to why I think you should stand by your estimate of not exceeding $3000.

"I am enclosing my check as Receiver for $3000, which amount I acknowledge to be due you.

"I feel that there ought not to be any additional payment, even though your expenses turned out larger than you had estimated.

"If you feel that I am wrong about this matter you, of course, have the option of presenting the matter to Judge Davis, and we can then have a hearing on this question and I will, of course, abide by whatever order Judge Davis makes. Without that order, I do not feel justified in going above the amount heretofore fixed by the Court to cover the expenses, nor do I feel justified in asking the Court to order any additional amount paid."

On February 10th plaintiff replied reviewing the correspondence which made up the contract and saying there was no profit to plaintiff in the assignment.

On February 21st defendant replied that he did not feel that he should recede from his position, but stated that it would be perfectly agreeable to him for plaintiff to write Judge Davis setting forth its views and contentions in the matter.

On March 4th plaintiff wrote Judge Davis, asking him to read the correspondence between plaintiff and defendant, and asking him to advise plaintiff of his opinion with reference to it.

On April 10th Judge Davis replied, advising that he would follow the recommendation of the receiver.

Plaintiff, however, did not present its claim to the court for allowance, but elected to bring the present action against defendant in his individual capacity, seeking to hold him personally liable for the payment of his claim.

Plaintiff's account for expenses consists of disbursements made by plaintiff to its engineers employed in making the survey, that is, for living expenses which embrace hotel, meals and laundry, and for traveling expenses. No account, however, was kept as to the actual expenditures made by the engineeers for living expenses, but they were allowed a flat rate of eight dollars a day and were paid on that basis without regard to their actual expenditures. There was testimony, however, on the part of plaintiff, that eight dollars per day represents an amount which is fair and reasonable for living expenses, and that experience shows that actual expenditures are much more on an average than eight dollars per day.

In support of its view as to the personal liability of the defendant under its contract with him, plaintiff relies on the doctrine announced in Taylor v. Davis, 110 U. S. 330, as follows:

"When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. . . .

"If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate." [See also: Koken Iron Works v. Kinealy, 86 Mo. App. 199; Gnadt v. Moore (Mo. App.), 297 S. W. 468.]

But the doctrine thus announced has no application to a receiver, who holds his position under the appointment of a court and discharges his duties under its supervision and direction. A receiver is not a trustee in the strict sense of the term, and is rarely, if ever, referred to in the books as a trustee. He has no such unrestrained powers over the trust estate as are ordinarily vested in a trustee under a trust agreement, where the trustee looks alone to the trust agreement for his powers and not to the orders or directions of a court. When a trustee deriving his powers from a trust agreement contracts as such with another, such other is entitled to assume that he has the power to make such contract and the funds to discharge it. The trustee possesses and manages the trust estate much the same as though he were the owner, within the powers granted by the trust agreement, and without looking to a court for orders or directions. He makes contracts and discharges them out of the trust estate without resorting to a court for permission to do so.

But the position of a receiver is quite different. He is not, as already said, a trustee in the strict sense of that term, but is an officer of the court, and the estate in his charge is *in custodia legis*. He takes his powers not from a trust agreement, but from the orders of the court. He is but the arm or hand of the court. He acts as the representative of the court and is subject to its orders. The court itself has the custody of the estate, the receiver is but the court's creature. Dietrich v. O'Brien, 122 Md. 482; Coy v. Title Guaranty & Trust Co., 198 Fed. 275; Metropolitan Trust Co. v. N. C. L. Co., 162 Fed. 170; People ex rel. Attorney-General v. Security Life Ins. Co., 79 N. Y. 267; Bull v. International Power Co., 86 N. J. Eq. 275; Stuart v. Boulware, 133 U. S. 78; Pennsylvania Steel Co. v. New York, 198 Fed. 721; Davis v. Grey, 16 Wall. 203; Kreling v. Kreling, 118 Calif. 421; In re American Slicing Machine Co., 125 S. C. 214; Sullivan Timber Co. v. Black, 159 Ala. 570.]

So, it is a well settled rule that a receiver has no power to bind the estate in his hands by contract without the authority of the court. His contracts are ineffectual to bind the estate unless previously authorized or subsequently approved by the court. This rule is so well settled that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their own peril. [Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554; Stone v. St. Louis Union Trust Co., 183 Mo. App. 261, 166 S. W. 1091.] So, too, it is held, in view of this rule, that where persons knowingly deal with a receiver in his official capacity, and there is no agreement or intention that he shall be personally bound, he is not personally liable, though he acts in excess of his authority. He does not become personally liable merely because he undertakes to bind the estate in a contract he is not authorized to make. In the absence of fraud, or an agreement or intention on his part to assume personal liability, the other contracting party is charged with knowledge of his want of authority, and there is no warrant for a shifting of the liability to him personally. [Hendrie & Bolthoff Co. v. Parry, 37 Colo. 359; Southern Supply Co. v. Mathias, 147 Md. 256; Lehigh Coal & Nav. Co. v. Central R. R. Co., 35 N. J. Eq. 426; In re Wilson's Estate, 252 Pa. 372; Wolf v. Lovering, 159 Fed. 91; Greenough v. Safe Deposit & Trust Co., 251 Pa. 522; In re Erie Lumber Co., 150 Fed. 817.]

In the present case there can be no question that the plaintiff contracted with the defendant in his official capacity as receiver, and that there was no intention on the part of either the plaintiff or the defendant that the defendant should be personally bound. All the correspondence between the parties shows this. So does the fact that an order of the district court authorizing the contract was first procured, and the contract was entered into pursuant to the order. Plaintiff is charged with knowledge of the contents of the order, and the extent and limitations of defendant's powers as defined by it. There is no evidence that defendant was guilty of any fraud in the transaction. It is true that defendant advised plaintiff that the order of the court directed him to have the survey made in accordance with the terms of plaintiff's letters. But this was obviously a mere opinion of the defendant, resting on his construction of the letters, and not the representation of a fact. Whether or not the order of the court conformed to the terms of the letters is necessarily a matter of opinion arrived at from a construction of the letters. Moreover, we are not altogether persuaded that defendant's construction of the letters is wrong. The letters, if open for construction must be construed most strongly against the plaintiff, who wrote them. The language employed by plaintiff is this: "The expenses we estimate would be between two and three thousand dol-

lars.'' This language imports something more than a mere guess or conjecture. To estimate implies computation or calculation. Its lexical meaning is, to calculate, to compute, to reckon, to form an opinion of, to gauge, to judge, to calculate approximately. [Wood v. Saylor Tie & Timber Co. (Mo. App.), 67 S. W. (2d) 826.] Giving the language of the letters its natural construction, it would seem to import an assurance that the expenses would fall somewhere between the low and high estimate, and not exceed the latter. Obviously the letters were designed to create that impression. Surely it was not contemplated that the expenses would amount to approximately twice the high estimate and three times the low. But whatever may be the proper construction of the letters, we can see no grounds in the facts for holding defendant personally liable.

The commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.